IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TINA M EWELL,                                    Case No. 14-cv-931-pp

                        Plaintiff,

v.

ERIC TONEY, WILLIAM LEDGER,
and MATT BOBO,

                        Defendants.

---

**DECISION AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT (DKT. NOS. 42, 50)**

---

## I.    INTRODUCTION

On August 4, 2014, plaintiff Tina Ewell filed a complaint under 42 U.S.C. §1983. Dkt. No. 1. She amended the complaint on March 20, 2015. Dkt. No. 40. In the amended complaint, the plaintiff asserted that the defendants acted in a conspiracy to deprive her of her Fourth and Fourteenth Amendment rights. Id. at ¶31. The alleged violations included false arrest and false imprisonment. Id. at ¶¶31-35. Defendants Toney, Bobo and Ledger have filed motions to dismiss the complaint in its entirety. Dkt. Nos. 42, 50. The court grants those motions.

## II.   FACTS

The allegations in the amended complaint stem from a series of events that occurred between November 1 and November 20, 2013. Dkt. Nos. 33-1 at 2-6; 40 at ¶5. At that time, defendant Toney served as the District Attorney for

1

Fond du Lac County. Dkt. No. 40 at ¶3. Defendants Ledger and Bobo were detectives in the Fond du Lac City Police Department. Id. at ¶4. The department tasked the detectives with investigating a November 5, 2013 report that an individual had been missing since November 1, 2013, and the investigation led them to question the plaintiff. Dkt. No. 33-1 at 2; Id. at 6. See also Dkt. No. 52-1. As a result of the plaintiff's responses to the investigators' questions, and as a result of their review of surveillance video taken at a dollar store the night the person was alleged to have gone missing, the detectives asked the plaintiff to "accompany them to the Fond Du Lac Police Department for further interrogation." Dkt. No. 33-1 at 5; Dkt. No. 40 at ¶9. When the plaintiff declined to do so, the detectives arrested her and took her to the police department. Id. at ¶10. The plaintiff alleges that the arrest occurred without probable cause and in retaliation for her assertion of her constitutional rights. Id. at ¶12.

While under interrogation, the plaintiff asserted her right to remain silent, and she requested counsel. Id. at ¶15. Once the interrogation was over, the defendants had the plaintiff transported to the Fond du Lac County Jail. Id. at ¶17. The plaintiff alleges that the detectives "could not have had a reasonable belief that plaintiff had committed an offense." Id. at ¶18. The detectives "informed [the] jailers" that the plaintiff "was being charged with mutilating or hiding a corpse [Wis. Stat. §940.11], and with resisting or obstructing an officer [Wis. Stat. §946.41]." Dkt. No. 43 at 2.

2

The arrest, and transportation to the jail, took place on November 20, 2013. Dkt. No. 43 at 2. According to the plaintiff, defendant Toney (the district attorney for Fond du Lac County) became aware of the arrest around November 20, 2013, and knew or should have known that no probable cause existed to charge the plaintiff. Dkt. No. 40 at ¶19-20. Defendant "Ledger knew that Toney would not file a criminal complaint . . . without more information." Dkt. No. 43 at 2.

On November 22, 2013, defendant Ledger prepared a "probable cause statement," which he signed at 4:02 p.m. Dkt. No. 33-1 at 1, 44. Attached to the one-page probable cause statement was a five-page, single-spaced Word document. Id. at 2-6. The affidavit contained extensive information regarding the missing person; three paragraphs of the affidavit involved the plaintiff. Id. at 3 (last paragraph on page); 5 (first full paragraph on page), 5 (last paragraph on page). Defendant Ledger prepared the affidavit after the officers took the plaintiff into custody; the affidavit states that ". . . [the plaintiff was] taken into custody as a result of this investigation and currently [is] in custody at the Fond du Lac County Jail." At 4:15 p.m. on November 22, Fond du Lac Judge Richard J. Nuss found probable cause, and denied bond "pending court appearance." Id. The defendants indicate in their pleadings that "[t]he judge denied bail pending a court appearance." Dkt. No. 43 at 2. The "Probable Cause Determination" signed by Judge Nuss at 4:15 p.m. on November 22, 2013 states, "Bond denied pending court appearance." Dkt. No. 44.

The defendants attached to their pleadings a copy of the docket sheet for Eve Nance, the other person taken into custody on the day the plaintiff was arrested, dkt. no. 33-3; this docket makes reference to the November 22, 2013 probable cause finding, but makes no reference to a hearing. Id. It indicates that over the three days between November 22 and November 25, 2013, several search warrants were filed. Eventually, a complaint was filed against Ms. Nance, id. at 5; no complaint was filed against the plaintiff.

The record shows no further activity—although the plaintiff remained in custody—until November 26, 2013. On that date, the plaintiff filed a petition for *habeas corpus* in the Fond du Lac County Circuit Court. State of Wisconsin, et al. v. Eric Toney, et al., Case No. 2013CV000626, available at https://wcca.wicourts.gov. The defendants attached to their pleadings the transcript from a November 27, 2013 hearing before Judge Nuss on the plaintiff's petition for *habeas corpus*. Dkt. No. 45. At the hearing, the plaintiff argued that she had "been denied [her] constitutional rights to have [her] day in court with regard to the arrest that has taken place . . . or [her] being placed in custody." Id. at 3-4. The plaintiff alleged that she had been held without a probable cause hearing. The prosecutor responded, "That is not an accurate statement, because this Court conducted a Riverside hearing on November 22nd." Id. at 5. The defendants did not attach a transcript of any November 22, 2013 hearing. The Wisconsin Circuit Court Access Program ("CCAP") shows only one 2013 case involving the plaintiff, State of Wisconsin, et al. v. Eric Toney, et al., 2013CV000626, available at https://wcca.wicourts.gov. This is

4

the docket for the civil *habeas* proceeding for which the defendants provided this court with a transcript; the first event on that docket is the November 26, 2013 filing of the petition for a writ of *habeas corpus*. The docket makes no reference to any November 22 hearing.

The prosecutor offered, at the November 27 hearing on the *habeas* petition, to present the testimony of "a witness who is familiar with the investigation," but the state court declined that offer. Dkt. No. 45 at 6. Later in the *habeas* proceeding, the prosecutor argued that because the court had "reviewed the [probable cause] affidavit that was supplied by Detective Ledger" around 48 hours after the plaintiff was arrested, the probable cause determination was timely. Id. at 16. The plaintiff's counsel noted that she did not have access to the affidavit in support of the probable cause statement. Id. at 8. The judge subsequently informed the parties that Detective Ledger had "signed off" on the probable cause statement and affidavit "just when he brought them into my office." Id. at 21-22. While the judge indicated that the affidavit was quite thorough, id. at 22-23, the *habeas* hearing transcript makes clear that the judge made his probable cause finding based solely on the affidavit Detective Ledger submitted, and not after an evidentiary hearing.

The plaintiff alleges that on November 27, 2013, "defendant Toney admitted that plaintiff was being held in custody at his direction while the police sought to gather evidence to permit him to charge plaintiff." Dkt. No. 40 at ¶29. It is not clear whether the plaintiff is alleging that defendant Toney made this admission at the November 27, 2013 probable cause hearing.

Defendant Toney attended that hearing, as did one of his assistants, Dennis Krueger. Dkt. No. 45 at 2. Defendant Toney said almost nothing during the first part of the hearing; ADA Krueger was the "spokesperson." Id. at 5. ADA Krueger stated, in response to a defense argument that the plaintiff and Ms. Nance were being held while the officers conducted a "fishing expedition," that [t]his isn't a fishing expedition, this is an investigation that is narrowly focused on the involvement of the two people who were the last to be in the [missing person's] presence when he was still alive. So I believe that there is a proper purpose for the Court to continue the detention." Id. at 16-17.

At the November 27 hearing, the state judge reiterated that "there was certainly sufficient basis by this Court to find probable cause and sign [the probable cause finding], which I did, and I maintain that as I sit here today. Nothing has changed in that regard." Id. at 24.

The court denied the plaintiff's motion for a writ of *habeas corpus*. State of Wisconsin, et al. v. Eric Toney, et al., 2013CV000626, available at https://wcca.wicourts.gov. Toward the end of the hearing, the court asked whether anyone had an objection to discussing bond. Dkt. No. 45 at 28. Defendant Toney then became the "spokesperson," and asked the court to set the plaintiff's bond at "$50,000 cash, with nonmonetary conditions." Id. at 29. The nonmonetary conditions were that the plaintiff surrender her passport, have no contact with Ms. Nance, and have no contact with other parties discussed at the hearing. Id. After hearing argument from all parties, the court

set the plaintiff's bond at $50,000 and imposed the nonmonetary conditions defendant Toney had requested. Id. at 38-39; Dkt. No. 46.

The defendants provided this court with a document dated November 25, 2013, announcing that various county offices "in the City/County Government Center" of Fund du Lac County would be closed on Thursday, November 28 and Friday, November 29, 2013. Dkt. No. 47 at 2. The state court issued an order releasing the plaintiff on December 2, 2013 (the Monday after the Thanksgiving holiday). Dkt. No. 48.

## III.    PROCEDURAL HISTORY

On August 4, 2014, the plaintiff filed a complaint under 42 U.S.C. §1983 against defendants Eric Toney, William Ledger, Matt Bobo, Dennis Kruger and Mylan Fink. Dkt. No. 1. The complaint sought compensatory and punitive damages, as well as attorneys' fees, for alleged violations of the plaintiff's Fourth and Fourteenth Amendment rights. Id. at 2-3. On October 2, 2014, defendant Fink filed an answer and a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Dkt. Nos. 13-15. On October 23, 2014, the plaintiff filed a brief in opposition to Fink's motion to dismiss. Dkt. No. 24. On November 5, 2014, Fink filed a reply brief. Dkt. No. 25.

The court set a scheduling conference for December 15, 2014, and indicated that it would hear the motion to dismiss at that time. Dkt. No. 22. At that hearing, the plaintiff made an oral request to dismiss defendant Fink without prejudice. Dkt. No. 28. The court granted that request, and deemed Fink's motion to dismiss moot. Id. The clerk's office terminated defendant Fink

7

on December 15, 2014. The court granted the plaintiff leave to file an amended complaint by March 20, 2015. Id.

On September 30, 2014, defendants Bobo and Ledger filed an answer. Dkt. No. 10. On October 6, 2014, defendants Krueger and Toney filed their answer. Dkt. No. 18. On February 18, 2015, defendants Bobo and Ledger filed a motion to dismiss. Dkt. Nos. 31-32. On March 20, 2015, the plaintiff filed an amended complaint, which omitted claims against defendants Krueger and Fink. Dkt. No. 40. The clerk's office terminated defendant Kruger on March 20, 2015. Defendant Toney filed a motion to dismiss on April 10, 2015. Dkt. Nos. 42-48. Defendants Bobo and Ledger filed an amended motion to dismiss that same day. Dkt. Nos. 50-52. The plaintiff filed one brief in opposition that addressed both motions to dismiss. Dkt. No. 53. On April 30, 2015, defendant Toney filed a reply brief, Dkt. No. 54, and, on May 1, 2015, defendants Bobo and Ledger filed their reply brief, Dkt. No. 55. The court heard oral argument on the motions on June 9, 2015. Dkt. No. 56.

## IV.   STANDARD FOR MOTION TO DISMISS

Defendant Toney asks the court to dismiss the complaint in its entirety, arguing that the theories of absolute prosecutorial immunity and qualified immunity shield the defendant. Dkt. Nos. 42-43. He also asserts that the plaintiff has failed to state a claim upon which relief can be granted, specifically asserting that the plaintiff has not met the federal pleading standards for the claim of conspiracy. Id. Defendants Ledger and Bobo ask the

8

court to dismiss the complaint in its entirety under Fed. R. Civ. P. 12(b)(6), and also assert a qualified immunity defense. Dkt. Nos. 50-51.

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must state a claim for relief that is plausible on its face." Lodholtz v. York Risk Servs. Group, Inc., 778 F.3d 635, 639 (7th Cir. 2015) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Lodholtz, 778 F.3d at 639 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). The court "draw[s] all reasonable inferences and facts in favor of the nonmovant," but the court "need not accept as true any legal assertions." Lodholtz, 778 F.3d at 639 (citing Vesely v. Armslist LLC, 762 F.3d 661, 664-65 (7th Cir. 2014)).

## V.  ANALYSIS

   a.  <u>The court takes judicial notice of the Fond du Lac Circuit Court documents, because their existence is not subject to reasonable dispute</u>.

In his motion to dismiss, defendant Toney asks the court to take judicial notice of (1) the state court's probable cause determination (Dkt. Nos. 44, 52-1); (2) the state court's hearing on the plaintiff's petition for *habeas corpus* (Dkt. No. 45); (3) the state court's order requiring post-arrest detention (Dkt. No. 46); (4) the state court's notice of courthouse closure (Dkt. No. 47); and (5) the state court's order releasing the plaintiff (Dkt. No. 48). Dkt. No. 43 at ns.1-4. Defendants Ledger and Bobo also ask the court to take judicial notice of the state court's probable cause determination. Dkt. No. 51 at 7.

9

Federal Rule of Evidence 201 governs judicial notice of adjudicative facts. It allows the court to take notice of "a fact that is not subject to reasonable dispute because it: is generally known within the trial court's territorial jurisdiction; or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1), (2). A court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). The court may do this "at any stage of the proceeding." Fed. R. Evid. 201(d). Upon "request, a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed." Fed. R. Evid. 201(e). "If the court takes judicial notice before notifying a party, the party, on request, is still entitled to be heard." Id.

"In order for a fact to be judicially noticed, indisputability is a prerequisite." Hennessy v. Penril Datacomm Networks, Inc., 69 F.3d 1344, 1354 (7th Cir. 1995). "Judicial notice is premised on the concept that certain facts . . . exist which a court may accept as true without requiring additional proof from the opposing parties." General Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1081 (7th Cir. 1997). Courts take judicial notice cautiously and will "strictly adhere to the criteria established by the Federal Rules of Evidence." Id. (internal citations omitted).

The Seventh Circuit allows a district court "to take judicial notice of the relevant decisions of courts and administrative agencies." Opoka v. I.N.S., 94 F.3d 392, 394 (7th Cir. 1996). Those "relevant decisions" include "'proceeding[s] in other courts, both within and outside of the federal judicial

10

system, if the proceedings have a direct relation to matters at issue.'" Id. (quoting Philips Med. Sys. Int'l v. Bruetman, 982 F.2d 211, 215 n.2 (7th Cir. 1992)). "[I]t is a well-settled principle that the decision of another court . . . is a proper subject of judicial notice." Opoka, 94 F.3d at 394 (citing Green v. Warden, U.S. Penitentiary, 699 F.2d 364, 369 (7th Cir. 1983)).

The Seventh Circuit also has addressed whether a district court may "consider public court documents filed in [an] earlier . . . state court case in deciding . . . motions to dismiss." Henson v. CSC Credit Servs., 29 F.3d 280, 284 (7th Cir. 1994). Federal Rule of Civil Procedure 12(d) states:

> If, on motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d). The Seventh Circuit has held that a district court could "'take judicial notice of matters of public record' without converting a 12(b)(6) motion into a motion for summary judgment." Henson, 29 F.3d at 284 (quoting U.S. v. Wood, 925 F.2d 1580 (7th Cir. 1991)). The court held that the district court had "properly considered the public court documents in deciding the . . . motions to dismiss." Henson, 29 F.3d at 284. And, as recently as 2013, the Seventh Circuit took "a broader view of documents that may be considered on a motion to dismiss." Williamson v. Curran, 714 F.3d 432, 436 (7th Cir. 2013). District courts "may consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that

11

are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." Id. (internal citations omitted).

The case law emphasizes, however, that courts do "not consider[] the reasons underlying" another court's decision. Opoka v. I.N.S., 94 F.3d 392, 395 (7th Cir. 1996). When taking judicial notice of another court's determinations, the noticing court recognizes "the simple fact that [a] decision has been made." Id. "[A] court may take judicial notice of another court's order only for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation." U.S. v. Jones, 29 F.3d 1549, 1553 (7th Cir. 1994) (citations omitted).

Because the Fond du Lac Circuit Court probable cause determination exists and its existence is not subject to reasonable dispute, the court will take judicial notice of the Probable Cause Statement and Judicial Determination and the supporting affidavit. Dkt. Nos. 33-1, 44. For the same reason, the court will take judicial notice of the transcript of the November 27, 2013 *habeas corpus* hearing, dkt. no. 45, and the state court's December 2, 2013 order releasing the plaintiff from state custody, dkt. no. 48. The court will take judicial notice of the closure of the Fond du Lac courthouse for the 2013 Thanksgiving Holiday, because that fact "is generally known within the . . . territorial jurisdiction [and] can be accurately . . . determined from" accurate sources. Fed. R. Evid. 201(b)(1), (2).

These findings of judicial notice, however, do not establish that the reasoning in any of the legal documents was either correct or incorrect; the court merely takes notice of their indisputable existence in the public record.

      b.    <u>The court finds that some of the plaintiff's allegations do not state a claim against defendant Toney, and that qualified immunity protects Toney from her other claims.</u>

Defendant Toney argues in his amended motion to dismiss that the plaintiff's suit against him is barred by absolute immunity, qualified immunity, and failure to state a claim. Dkt. No. 42.

The Supreme Court has recognized two types of immunity for public officials in §1983 litigation—qualified immunity and absolute immunity. <u>Buckley v. Fitzsimmons</u>, 509 U.S. 259, 268 (1993). "Most public officials are entitled only to qualified immunity." <u>Id.</u> (citing <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 807 (1982) and <u>Butz v. Economou</u>, 438 U.S. 478, 508 (1978)). Officials who have qualified immunity "are not subject to damages liability for the performance of their discretionary functions when 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Id.</u> Some officials, however, perform "special functions" which "deserve absolute protection from damages liability." <u>Id.</u> at 268-69. A court deciding whether absolute immunity exists looks to "the nature of the function performed, not the identity of the actor who performed it." <u>Id.</u> at 269 (quoting <u>Forrester v. White</u>, 484 U.S. 219, 229 (1988)).

The Supreme Court has held that prosecutors have absolute immunity "for the initiation and pursuit of a criminal prosecution." <u>Id.</u> (citing <u>Imbler v.</u>

13

Pachtman, 424 U.S. 409 (1976)). In Burns v. Reed, 500 U.S. 478, 487 (1991), the Supreme Court held that a prosecutor's "appearance as a lawyer for the State in the probable-cause hearing, where he examined a witness and successfully supported the application for a search warrant" was a function "absolutely immune from liability in a § 1983 suit . . . ." A prosecutor also is "absolutely immune from liability in §1983 suit," for "conduct" that includes "support[ing] the application for a search warrant," or "examin[ing] a witness." Id.

These decisions, however, do not inform an analysis of defendant Toney's actions in the current case. There was no probable cause hearing; as this court recounted in the facts, the defendant officers prepared a statement of probable cause and presented it to the state court judge, who found probable cause from the facts alleged in the affidavit attached to that statement. There was no pre-arrest search warrant, so defendant Toney did not support an application for one. Nor did defendant Toney examine a witness (either at the non-existent probable cause hearing, or at the November 27, 2013 *habeas corpus* hearing). Accordingly, the court cannot find that defendant Toney has absolute immunity from the suit at bar.

The question, then, is whether defendant Toney enjoys qualified immunity for the actions the plaintiff alleges that he took. The Supreme Court held in Buckley that "when a prosecutor 'functions as an administrator rather than as an officer of the court' he is entitled only to qualified immunity."

14

Buckley v. Fitzsimmons, 509 U.S. at 273 (quoting Imbler, 424 U.S. at 431). The court explained,

> There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand. When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other. Thus, if a prosecutor plans and executes a raid on a suspected weapons cache, he has no greater claim to complete immunity than activities of police officers allegedly acting under his direction.

Id. at 273-74 (internal quotations and citations omitted).

The plaintiff's allegations relate to decisions, actions or events that took place outside of the courtroom, prior to charges being brought. The plaintiff specifically argues that Toney played a role in holding the plaintiff in custody between the date of her arrest and December 2, 2013, while the officers allegedly investigated in an attempt to find further evidence implicating the plaintiff, and that he assisted the officers in their investigation. The court finds that these allegations constitute the kind of investigative functions which the Supreme Court has found entitle a prosecutor to qualified, not absolute, immunity. Accordingly, the court next must determine whether qualified immunity protects the actions the plaintiff alleges that Toney took.

The first part of the plaintiff's claim is that defendant Toney "knew," at the time that the officer defendants arrested the plaintiff on November 20, 2015, that there was no probable cause for her arrest. Dkt. No. 40 at ¶20. Nowhere in the original or the amended complaint does the plaintiff allege any

15

facts to support that allegation. The plaintiff does not state when defendant Toney found out about the plaintiff's arrest, how he found out about it, or why he would have known or had reason to believe that the officers had no probable cause to arrest her. The court finds that this portion of the plaintiff's complaint does not state a claim, much less require the court to make an immunity determination.

The real crux of the plaintiff's claim against Toney lies in her allegation that on November 27, 2013, "defendant Toney admitted that plaintiff was being held in custody at his direction while the police sought to gather evidence to permit him to charge plaintiff with an offense," id. at ¶29, that Toney helped the officers with their investigation, and that Toney was responsible for the plaintiff's being in custody from the date of her arrest until December 2, 2013.

Again, the facts do not support two of these claims. The facts demonstrate that it was the judge, not Toney, who kept the plaintiff in custody. It was not Toney, but Judge Nuss, who ordered the plaintiff detained on November 22, 2013. The plaintiff has not submitted any information showing that Toney provided the judge with false or misleading information to cause him to make that determination; indeed, the plaintiff has not provided any information indicating that Toney played any role in causing Judge Nuss to find probable cause or to order the plaintiff detained pending a court hearing.

Nor do the facts support an argument that it was because of Toney that the judge kept the plaintiff in custody. At the November 27, 2013 hearing, rather than insisting that the plaintiff be held without bond, Toney asked the

court to set bond, and the court did so. It was ADA Krueger, not defendant Toney, who argued at that hearing that the court's probable cause determination had been correct. It was not defendant Toney who ordered the plaintiff to remain in custody from November 27 through December 2; the *judge* issued the original detention order, and then set the bond. Defendant Toney was the prosecutor, not the judge; he did not have the authority to countermand the judge's order.

The plaintiff's argument implies that Toney violated the plaintiff's constitutional rights by not actively trying to convince the judge to reverse, or change, that order. This argument again assumes that Toney had some knowledge that was exculpatory, or that would have resulted in Judge Nuss's changing his mind. The plaintiff has provided no proof of such evidence. Thus, the court finds no support for the argument that it was Toney who kept the plaintiff in custody, whether during an investigation or otherwise.

Finally, the plaintiff makes issue of the fact that while the court set bond on November 27, 2013, it did not sign an order releasing the plaintiff until December 2, 2013. Again, the plaintiff fails to point out how Toney was responsible for this fact. There was an intervening holiday that caused the court as a whole to be closed for two days, followed by a weekend (during which courts are closed). The plaintiff does not cite to any authority indicating that Toney had the constitutional obligation seek out the judge, during a time when the court was not in session, and try to convince the judge to release the plaintiff.

This leaves only the plaintiff's allegation that Toney assisted the investigating officers in conducting their investigation. To determine whether qualified immunity requires Toney's dismissal as to that allegations, the court must address "two central questions:" "whether the plaintiff has alleged a deprivation of a constitutional right at all," and, if so, whether the right at issue was clearly established at the time and under the circumstances presented." Whitlock v. Brueggemann, 682 F.3d 567, 580 (7th Cir. 2012).

There is nothing unlawful in a prosecutor assisting law enforcement officers with an investigation—indeed, many court decisions involving immunity acknowledge that part of a prosecutor's job is to "giv[e] legal advice to the police." Burns v. Reed, 500 U.S. 478, 494 (1991). The mere fact that Toney may have assisted the officers, or given them legal advice, during their investigation does not constitute the violation of a constitutional right. Nor does the plaintiff point to any "assistance" or advice Toney gave that violated the Constitution. At best, the facts indicate only that, while the plaintiff was in custody under the judge's order, Toney may have been working with the officers in some way or another as they continued to investigate. Even if Toney was working with the officers, that does not constitute a deprivation of any constitutional right, established or otherwise. Thus, the court finds that Toney is entitled to qualified immunity for that alleged action.

For all of the above reasons, the court dismisses defendant Toney as a defendant.

c.  The state judge's probable cause determination does not bar the plaintiff's claims against defendants Ledger and Bobo, because the parties did not have the opportunity to fully and fairly litigate the probable cause issue.

"[I]n order to prevail on a Section 1983 claim, the claimant must allege '(1) that he was deprived of a right secured by the Constitution or laws of the United States, and (2) that the deprivation was visited upon [her] by a person or persons acting under color of state law.'" Reynolds v. Jamison, 488 F.3d 756, 764 (7th Cir. 2007) (quoting Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)). The plaintiff alleges that detectives Ledger and Bobo violated her Fourth and Fourteenth Amendment rights through a false arrest and subsequent false imprisonment.

i.  *The plaintiff is not collaterally estopped from litigating the sufficiency of the evidence supporting the state court's probable cause determination, because the parties did not have a full and fair opportunity to litigate that issue in state court.*

The plaintiff alleges that Bobo and Ledger did not have probable cause to arrest her, or to hold her in custody. For the plaintiff "[t]o prevail on [the] constitutional claim for false arrest, [she] must show there was no probable cause for [the] arrest." Williams v. City of Chicago, 733 F.3d 749, 756 (7th Cir. 2013) (citations omitted). "Probable cause is an absolute defense to a claim for wrongful arrest asserted under section 1983 against police officers." Wheeler v. Lawson, 539 F.3d 629, 634 (7th Cir. 2008). Probable cause also serves as an absolute defense to a claim of false imprisonment in a §1983 suit. Abbott v. Sangamon Cnty., III, 705 F.3d 706, 713 (7th Cir. 2013) (citing Mustafa v. City of Chicago, 442 F.3d 544, 547 (7th Cir. 2006)).

19

"Probable cause exists if 'at the time of the arrest, the facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one with reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" Williams, 733 F.3d at 756 (quoting Gonzalez v. City of Elgin, 578 F.3d 526, 537 (7th Cir. 2009)). The concept is "'fluid'" in nature and "'relies on the common-sense judgment of the officers based on the totality of the circumstances.'" Williams, 733 F.3d at 756 (quoting U.S. v. Reed, 443 F.3d 600, 603 (7th Cir. 2006)).

The defendants respond that the state court's determination that probable cause existed bars this suit. A state-court judicial determination on a particular issue can preclude re-litigation of that issue, under certain circumstances. Schertz v. Waupaca Cnty., 875 F.2d 578, 581 (7th Cir. 1989) (citation omitted). In order for a federal court to determine whether such circumstances exist, "[a] federal court applies state collateral estoppel law." Id. The Seventh Circuit repeatedly has held that "federal courts should apply the state's collateral estoppel law in determining whether a §1983 claim is precluded by a prior state judicial proceeding." Guenther v. Holmgreen, 738 F.2d 879, 883 (7th Cir. 1984) (citing Haring v. Prosise, 462 U.S. 306, 312 (1983)). "Under Wisconsin law, the collateral estoppel doctrine applies when an issue was actually litigated and decided and its resolution was necessary to the prior disposition." Id. (citing Reckner v. Reckner, 105 Wis. 2d 425 (Ct. App. 1981)). "The Wisconsin standard is . . . substantially similar to the traditional

20

standard set forth in Whitley." Guenther v. Holmgreen, 738 F.2d at 883 (internal quotation marks and citation omitted).

"Under collateral estoppel, 'once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.'" Id. (quoting Montana v. U.S., 440 U.S. 147, 153 (1979)). "However, collateral estoppel applies only when the party against whom the earlier decision is being asserted had a 'full and fair opportunity' to litigate the issue in question." Id. (internal quotation marks and citations omitted).

For this court to determine whether collateral estoppel precludes the plaintiff from arguing the sufficiency of the evidence to support the state court's probable cause finding, then, the court must answer four questions: (1) whether the issue before this court is "the same as [the issue] in the prior judicial proceeding;" (2) whether the parties actually have litigated the issue in the previous proceeding; (3) whether the prior court has "actually determined" the issue; and (4) whether "the determination . . . was necessary to support the judgment in the prior proceeding." Id. at 884 (citing Whitley v. Seibel, 676 F.2d 245, 248 (7th Cir. 1982)).

With regard to the first question—whether the issue the plaintiff raises in this federal case is the same as the issue the state court decided at the probable cause hearing—the court concludes that the answer is yes. The court's review of the complaint, the pleadings and the oral argument

demonstrate that the plaintiff is challenging the sufficiency of the evidence that supported the state court's finding that probable cause existed to arrest and to hold the plaintiff. The plaintiff alleges that "nothing . . . could have caused a reasonable law enforcement official to believe that plaintiff had engaged in criminal wrongdoing." Dkt. No. 43 at ¶8. She also states, "The facts known to defendants Ledger and Bobo when they arrested plaintiff did not provide probable cause." Id. at ¶11. Further, she asserts that the defendants "could not have had a reasonable belief that plaintiff had committed an offense." Id. at ¶18. According to the plaintiff, Detective Ledger's probable cause statement "[c]ontained several material false statements and material omissions, and [d]id not contain sufficient facts to warrant a reasonable belief that plaintiff had committed an offense." Id. at ¶¶26a-26b.

At the hearing on the motions to dismiss, the court asked counsel for the plaintiff whether it was correct in understanding that the plaintiff was not arguing "that the detectives had manufactured evidence or lied to the DA or the state court judge, but rather that they had arrested her on less than probable cause, and held her until they could justify a charge against her, beyond the time permissible under Seventh Circuit law." Dkt. No. 56 at 2. Counsel for the plaintiff confirmed that he was arguing lack of probable cause, not misconduct on the part of the defendants. Id.

With regard to the second question—whether the parties actually litigated the issue in the prior hearing—the court finds that the answer is no. The officer defendants arrested the plaintiff on November 20, 2013. Dkt. No. 43

22

at 2. On November 22, 2013, defendant Ledger prepared a "probable cause statement," which he signed at 4:02 p.m. Dkt. No. 44. Attached to the one-page probable cause statement was a recitation of the facts uncovered up to the date of the arrest, contained in a five-page, single-spaced Word document. Dkt. No. 33-1 at 2-6. At 4:15 p.m. on November 22, Fond du Lac Judge Richard J. Nuss found probable cause, and denied bond "pending court appearance." Id. There is no transcript of any hearing on November 22, 2013—Ledger signed a probable cause statement, and twelve minutes later, Judge Nuss found probable cause.

The defendants did attach to their pleadings the transcript from a November 26, 2013 hearing before Judge Nuss on the plaintiff's petition for *habeas corpus*. Dkt. No. 45. At that hearing, the plaintiff argued that she had "been denied [her] constitutional rights to have [her] day in court with regard to the arrest that has taken place . . . or [her] being placed in custody." Id. at 3-4. During the *habeas* hearing, the plaintiff alleged that she had been held without a probable cause hearing. The prosecutor responded, "That is not an accurate statement, because this Court conducted a Riverside hearing on November 22nd." Id. at 5. Again, however, the defendants did not attach to the pleadings in this case a transcript of any November 22, 2013 hearing. The Wisconsin Circuit Court Access Program ("CCAP") shows only one 2013 case involving the plaintiff, State of Wisconsin, et al. v. Eric Toney, et al., 2013CV000626, available at https://wcca.wicourts.gov. That was the civil *habeas* proceeding for which the defendants provided this court with a transcript; the first event

23

on that docket is the November 26, 2013 filing of the petition for a writ of *habeas corpus*. It makes no reference to any November 22 hearing.

The prosecutor offered, at the November 26 hearing on the *habeas* petition, to present the testimony of "a witness who is familiar with the investigation," but the state court declined that offer. Dkt. No. 45 at 6. Later in the *habeas* proceeding, the prosecutor argued that because the court had "reviewed the [probable cause] affidavit that was supplied by Detective Ledger" around 48 hours after the plaintiff was arrested, the probable cause determination was timely. Id. at 16. The judge subsequently informed the parties that Detective Ledger had "signed off" on the probable cause statement and affidavit "just when he brought them into my office." Id. at 21-22. While the judge indicated that the affidavit was quite thorough, id. at 22-23, the *habeas* hearing transcript makes clear that the judge made his probable cause finding based solely on the affidavit Detective Ledger submitted, and not after an evidentiary hearing.

The court finds that the answer to the third question—whether the state court actually determined the probable cause issue—is yes. The state court judge stated at the *habeas* hearing that he was satisfied that Detective Ledger's affidavit demonstrated probable cause. Dkt. No. 45 at 23. The answer to the fourth question—whether the state court's determination was necessary to support his decision—also is yes. But because the parties did not have a full and fair opportunity to litigate the probable cause question in state court, the

court cannot conclude that collateral estoppel bars the plaintiff's attack on the sufficiency of the evidence supporting probable cause.[1]

> ii.       *The court concludes that probable cause did exist for Ledger and Bobo to arrest the petitioner. Because probable cause existed, the defendants did not violate the plaintiff's clearly established rights and qualified immunity bars this suit.*

Defendants Ledger and Bobo next contend that, regardless of whether the plaintiff is estopped from litigating probable cause by the state judge's finding, qualified immunity requires the dismissal of the plaintiff's claims against them. As discussed earlier in this decision, qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Weinmann v. McClone, --- F.3d ---, 2015 WL 3396858, at *2 (7th Cir. May 27, 2015) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The doctrine "protects a government official's ability to function without the threat of distraction and liability . . . and, on the other hand, it affords members of the public the ability to vindicate constitutional violations by government officials who abuse their offices." Gibbs v. Lomas, 755 F.3d 529, 537 (7th Cir. 2014) (internal citation and quotation marks omitted). The doctrine requires a two-part analysis: "(1) whether the

---

[1] The plaintiff also argued at the hearing on the motion to dismiss that the state court's probable cause determination was not preclusive because it wasn't a final, appealable order. This argument confuses the standard for claim preclusion (*res judicata*)—which requires a final, appealable order—with the standard for issue preclusion (collateral estoppel)—which requires only a finding on a particular issue after a full and fair opportunity to litigate. See Michelle T. by Sumpter v. Crozier, 173 Wis. 2d 681, 694 n.13 (Wis. 1993) (quoting Lawlor v. Nat'l Screen Serv. Corp., 349 U.S. 322, 326 (1955)).

Case 2:14-cv-00931-PP   Filed 01/04/16   Page 25 of 31   Document 61

facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional right, and (2) whether the constitutional right was clearly established at the time of the alleged violation." Williams v. City of Chicago, 733 F.3d 749, 758 (7th Cir. 2013) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)).

The Seventh Circuit "evaluate[s] claims for qualified immunity by the standard of objective reasonableness." Olson v. Champaign Cnty., Ill., --- F.3d ---, 2015 WL 1934388, at *5 (7th Cir. Apr. 30, 2015) (citing Malley v. Briggs, 475 U.S. 335, 344 (1986)). If a police officer "intentionally or recklessly provide[s] false information . . . ," he does not act reasonably. Olson, 2015 WL 1934388 at *6 (citation omitted). This includes information provided to support a probable cause determination. Id. The officer may not provide "'an affidavit that contained statements he knew to be false or would have known were false had he not recklessly disregarded the truth and no accurate information sufficient to constitute probable cause attended the false statements.'" Id. (quoting Lawson v. Veruchi, 637 F.3d 699, 704 (7th Cir. 2011)).

"[Q]ualified immunity is an affirmative defense." Wheeler v. Lawson, 539 F.3d 629, 639 (7th Cir. 2008) (citation omitted). Therefore, once the defendants raise the doctrine, the plaintiff bears the burden of defeating it. Id. (citation omitted). In order to "defeat a qualified immunity defense," the plaintiff must "'point[] to a clearly analogous case establishing a right to be free from the specific conduct at issue' or show[] that 'the conduct [at issue] is so egregious that no reasonable person could have believed that it would not violate clearly

26

established rights.'" Id. (quoting Smith v. City of Chicago, 242 F.3d 737, 742 (7th Cir. 2001)).

The plaintiff has not pointed to a clearly analogous case establishing a right to be free from the conduct at issue. Nor has she demonstrated that Ledger and Bobo committed such egregious behavior that no reasonable person could have believed their behavior would not violate clearly established rights. Rather, she alleges in the complaint that the defendants "conspired, confederated and agreed to deprive [her] of rights secured by the Fourth and Fourteenth Amendments." Dkt. No. 1 at 3. She alleges that Ledger and Bobo's part in this conspiracy was that they arrested the plaintiff. Id. at 3. She further alleges that Ledger "signed an affidavit purporting to set out a basis for continuing to detain plaintiff without the filing of charges." Id.

The plaintiff's allegation that Ledger and Bobo "arrested" her relates to her right against warrantless arrest under the Fourth Amendment. Generally, the Fourth Amendment protects against warrantless arrests. An officer may arrest someone without a warrant, however, if he has a reasonable belief that the person is guilty of a felony. U.S. v. Watson, 423 U.S. 411, 417 (1976) (quoting Carroll v. U.S., 267 U.S. 132, 156 (1925)). In order to determine whether the officer had such a reasonable belief, the court must determine whether probable cause existed at the time of the arrest. Watson, 423 U.S. at 417.

"Probable cause 'is to be viewed from the vantage point of a prudent, reasonable, cautious police officer on the scene at the time of the arrest guided

27

by his experience and training.'" <u>Williams v. Kobel</u>, 789 F.2d 463, 471 (7th Cir.

1986) (quoting <u>U.S. v. Davis</u>, 458 F.2d 819, 821 (D.C. Cir. 1972)).

> 'In dealing with probable cause . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men not legal technicians, act. The standard of proof is accordingly correlative to what must be proved.'

<u>Id.</u> (quoting <u>Brinegar v. U.S.</u>, 338 U.S. 160, 175 (1949)).

In light of this standard, the court looks at the information in the

probable cause statement Ledger submitted. Dkt. No. 33-1. That information

indicates that at the time they arrested the plaintiff, the officers knew the

following:

\*      The plaintiff told police that she had not seen or talked to the

decedent since the afternoon of Friday, November 1, 2013.

\*      The plaintiff admitting having had the keys to the decedent's house

over the following weekend. She also admitted having been in the house the

following Sunday, and talking to her sister (the decedent's wife) on the phone

that Sunday afternoon.

\*      Video surveillance from the Family Dollar store recorded the

plaintiff and her sister (the decedent's wife) entering the store at 7:30 p.m. on

Friday, November 1, 2013. The video showed the plaintiff purchasing two

shower curtain liners and a package of clear shower hooks, of the same kind

Officer Ledger observed at the decedent's residence on two subsequent

occasions. Witness statements indicated that the shower curtains were

replaced after the decedent went missing. Other witness statements gave

28

Ledger reason to believe that the prior shower curtains—the ones that were replaced—had been used to conceal, transport or otherwise dispose of evidence regarding cause of the decedent's death.

\*      A search conducted on November 20, 2013 revealed biological evidence, fibers, human hairs, clothing, and other evidence.

While the probable cause statement alleged numerous other facts, the facts above are those directly related to the petitioner. Would these facts warrant a prudent, reasonably cautious police officer, taking into account the factual and practical considerations of everyday life, to reach the "belief that 'an offense has been or is being committed'"? See Williams v. Kobel, 789 F.2d at 470 (quoting Brinegar, 338 U.S. at 175-76. The court concludes that they would. While they would not prove beyond a reasonable doubt that the plaintiff played some part in concealing the decedent's disappearance and/or death, they are sufficient to provide probable cause for arrest.

Because the court reaches this conclusion, it cannot find that Ledger and Bobo's arrest of the plaintiff, or Ledger's filing of the probable cause statement, was such egregious behavior that any person would know that it violated the plaintiff's clearly established Fourth and Fourteenth Amendment rights. Accordingly, Ledger and Bobo are entitled to qualified immunity, and the court will dismiss the claims against them on that basis.

d.  Section 1985 protects individuals from conspiracies between public and private actors. Because the plaintiff brings this suit against three state actors, and not against private individuals, the court dismisses the conspiracy claims.

The court also must dismiss the plaintiff's conspiracy claim. The plaintiff alleges that the defendants conspired to deprive her of constitutional rights. Although she does not cite any statutory basis for this allegation, the court will interpret this as a claim under 42 U.S.C. §1985, which governs conspiracies to interfere with civil rights. Section 1985(3) prohibits "two or more persons" from conspiring to deprive a person "of rights or privileges." 42 U.S.C. §1985(3). However, "[t]he function of §1985(3) is to permit recovery from a private actor who has conspired with state actors." Id. When "[a]ll defendants are state actors, . . . a §1985(3) claim does not add anything except needless complexity." Fairley v. Andrews, 578 F.3d 518, 526 (7th Cir. 2009). The Seventh Circuit has consistently held that in order to prevail on a claim for conspiracy under §1985, the "plaintiff must demonstrate that: (1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights; and (2) those individual(s) were willful participant[s] in joint activity with the State or its agents." Reynolds v. Jamison, 488 F.3d 756, 764 (7th Cir 2007). Because all three defendants in this case are state actors, the court will grant the motions to dismiss the conspiracy claims.

**CONCLUSION**

The plaintiff claims that the defendants violated her Fourth and Fourteenth Amendment rights. The court finds that she fails to state a claim

30

against Toney in some of her allegations, and that Toney is entitled to qualified immunity on the remainder of the claims. With regard to Ledger and Bobo, while the court cannot find that collateral estoppel prevents re-litigation of the state court's probable cause determination, the court itself finds that sufficient facts existed to warrant their arrest of the petitioner, and thus that qualified immunity requires dismissal of the claims against them. Finally, the court finds that §1985 protects the plaintiff from a conspiracy to deprive her of her rights only if that conspiracy involved both state actors and private individuals. Because she did not bring a claim against any private individuals, the court will dismiss the conspiracy claims.

The court **GRANTS** defendant Eric Toney's motion to dismiss (Dkt. No. 42). The court also **GRANTS** the motion to dismiss filed by defendants Matt Bobo and William Ledger (Dkt. No. 50). The court **ORDERS** that the complaint is dismissed, effective immediately.

Dated in Milwaukee, Wisconsin this 4th day of January, 2016.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge

31